## CINCINNATI TRACTION BLDG. CO. v. WESTINGHOUSE AIR BRAKE CO.

### No. 6485.

Circuit Court of Appeals, Third Circuit.

July 21, 1938.

Stebbins, Blenko & Parmelee, of Pittsburgh, Pa., and Toulmin & Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., and H. A. Toulmin, both of Dayton, Ohio, of counsel), for appellant.

Henry R. Ashton, of New York City, and Frank B. Ingersoll and Smith, Buchanan, Scott & Ingersoll, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below the Cincinnati Traction Building Company, assignee of Patent No. 1,658,421, granted February 7, 1928, to W. G. Stuck for a rail brake for railway cars, and also assignee of four other patents, brought suit against the Westinghouse Air Brake Company, charging infringement thereof. After final hearing, Judge Gibson delivered an elaborate opinion, covering forty-one pages, wherein he thoroughly discussed the several patents, the prior art and the alleged infringement. Reference to his opinion avoids needless restatement by this court.

As often happens in these swollen patent records, the case, on final analysis, narrows down to certain issues and such is the fact in the present case.

Apart from the hand-power brakes operated on a single car by a brakeman, the engineer control of trains of cars is of two kinds, air brakes and electric ones. As found by the trial Judge, the Westinghouse Air Brake Company, the defendant, was "the pioneer in the air brake field, and also in the magnetic brake field to which the patents in suit relate."

In a general way it may be said that the air brake, as its name signifies, operates its brakes by compressed air, while magnetic brakes are applied to the rails by magnetism when the brake comes within the magnetic field—and such magnetic brakes date back some forty odd years. In that regard the court found: "This case, therefore, does not relate to a newly created art or to anything which is pioneer in character. The patents in suit relate to alleged improvements or engineering details proposed by the patentees beginning in the latter part of 1925, long after the magnetic brake art had been well developed." In addition thereto the court found that "it has not been established that the alleged inventions of the patent in suit have been commercially successful."

The marked trend of the trade has been in favor of air brakes, and in that regard the court found that since 1905 some fifty thousand air brakes have been installed in trolley cars alone by the Westinghouse and General Electric Company as against fifteen hundred to two thousand magnetic brakes and "not more than 200 magnetic brake installations have been made since 1925 and practically none is being made to-day." It further found:

"The greater popularity of the air brake was not due to any imperfection of the magnetic brake, which was the first to be developed, but because the air brake was more flexible and less expensive.

"The car of the Chicago Surface Lines, on which defendant's alleged infringing

brake was installed, is an experimental car which the Chicago Surface Lines desired to stop in the same distance and at the same rate as automobiles are stopped in dense traffic conditions. This was not possible with brakes operating on the wheels. alone, and the Chicago Surface Lines specified that the air brakes should be supplemented not only by magnetic brakes but also by dynamic brakes."

It will thus be seen that the patentee entered a developed art and his referred to patent is of no pioneer or revolutionary character. In that regard the court held: "The Stuck patent No. 1,658,421 is merely an improvement patent for minor engineering details coming very late in an old and well developed art, and accordingly must be strictly construed as limited to the particular arrangements and apparatus disclosed."

This brings us to a study of Stuck's patent. In his specification he states that it "relates to rail brakes for railway cars, more particularly the type known as electrically operated cars where an electric motor is employed." Further defining, and therefore limiting, his field, he states that while he employs the air supply of the usual air brake system, he does so "to perform two functions with respect to rail brakes as distinguished from wheel brakes." This air function he uses in his electric rail brake service for two purposes, "first, the operation of an air engine connected up with the rail brakes to position them within a magnetic field to be created between them and the rail; and secondly, to actuate a pneumatic circuit closer for an electro-magnet circuit to energize magnets to cause the magnetization of the rail shoes when they are positioned by the air engine within the magnetic field thus established between the brake shoes and the rail".

It will thus be seen that while Stuck uses air, it is used, first, to position magnetic air brake shoes within magnetic fields of the rails, so that the brake shoes may be attracted to the rails by magnetism; and secondly, another air mechanism to close an electric circuit to the trolley to magnetize the brake shoes. These elements were embodied in, for example, claim 1, namely, "an air engine connected with such air line, of suspended rail-brake shoes and associated magnets, the magnets adapted to be energized when the air actuates the circuit closer and the shoes adapted to be positioned within the magnetic field between it and the rail by action of the air engine." The same general features are carried into the other three claims.

Turning then to the question of infringement, we first note that it is embodied in a single experimental structure built by the defendant at the request of a third party. The situation is stated by the court, quoted above.

As to this structure, the court summed up the situation by a finding, which, if correct, disposes of the case, namely, "Defendant's brake is different in principle, mode of operation and construction from the brakes disclosed in the patents in suit. There is nothing common to the disclosures of any of the patents in suit and to defendant's brake which is not also common to the prior art."

After careful consideration, we concur in the court's view.

Referring to the patent specification and accompanying figures, it will be seen, first, that Stuck's track brake arrangement is normally supported some distance above the rail in what it calls a "safe position"; and secondly, that when functioning, it is moved by the air agent and a bell crank against the opposing force of suspension springs to an intermediate position within magnetic distance of the rails and thereby it is moved the rest of the distance to the rails by the magnetic attraction of the shoes themselves. Now the defendant uses no such agencies or mode of operation. On the contrary, in its structure the shoes drop by gravity when the air is vented and only the force of gravity moves the brake to the rails. The all important differences between Stuck and Westinghouse are summed up by the latter's expert:

"I understand this passage (Stuck's) to mean that the mechanical force pushes the shoe down to a certain intermediate position, at which the magnetic field becomes effective, and that from there on the magnetic field draws the shoes into contact with the rails and overcomes the force of the springs.

\*      \*      \*      \*      \*      \*

"Q. And how does this compare with the Westinghouse construction? A. In the Westinghouse construction the supporting force is removed, and the brakes are allowed to fall the whole way to the rail under the action of gravity.

"Q. Will they fall all the way to the rail, whether or not any magnetism is in the coils? .A. Yes."

As a matter of safety and efficiency, it is clear that if Westinghouse air failed, the brakes would automatically fall to the rails, while if Stuck's air supply failed, the brake would remain spring-suspended in its inoperative place above the rails.

In view of all these considerations, the court committed no error in holding the Westinghouse experimental structure did not infringe.

As to the court's ruling on other patents which for the most part consist of alleged improvements in an electric brake of the general Stuck type, we find no error, and in view of the length of this opinion, we limit ourselves to affirming on the court's reasoning its decree dismissing the bill.